IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| MOHAN KARKI, et al., | : | Case No. 1:25-cv-281 |
| Petitioners, | : | Judge Matthew W. McFarland |
| v. | : | |
| RICHARD JONES, Sheriff of Butler County, et al., | : | |
| Respondents. | : | |

## ORDER AND OPINION

This matter is before the Court on Petitioners' Second Amended Petition for Writ of Habeas Corpus and Declaratory and Injunctive Relief (Doc. 26). Federal Respondents filed a Return of Writ (Doc. 22), to which Petitioners filed a Reply (Doc. 27). This matter is therefore ripe for the Court's review. For the following reasons, Petitioners' Second Amended Petition (Doc. 26) is **DISMISSED** and Petitioners' Motion for Temporary Restraining Order (Doc. 29) is **DENIED AS MOOT**.

The three Petitioners in this matter are noncitizens who were ordered removed from the United States to Bhutan in 2014, 2019, and 2020, respectively. (Second Am. Habeas Petition, Doc. 26, ¶¶ 27, 34, 39.) They have since remained in the United States under orders of supervision for much of this time. (*Id.* at ¶¶ 76, 90, 146.) This release on supervision ended this past April, however, when each Petitioner was arrested and thereafter detained by immigration authorities. (*Id.* at ¶¶ 35, 40, 80.) Now, facing what

they believe to be their imminent removal, Petitioners ask this Court to (1) declare Respondents' actions to be unlawful; (2) enjoin the execution of their long-standing removal orders to allow for an evidence-based determination on the question of Petitioners' actual country of removal, whether that country has agreed to accept them, and to provide Petitioners with time to raise post-order protection claims; and (3) order their immediate release under supervision or require a bond hearing. (*Id.* at ¶ 13, Pg. ID 509-10.) Given the binding precedent of the Sixth Circuit, this Court must decline.

## FACTS AS ALLEGED

### I.  The Parties

Petitioners Mohan Karki, Madan Rai, and Som Dhimal are stateless Nepali-speaking Bhutanese refugees from the Lhotshampa ethnic minority. (Second Am. Habeas Petition, Doc. 26, ¶ 2.) Each resettled in the United States over a decade ago. (*Id.*) As a juvenile, Petitioner Karki pled guilty to charges of burglary, criminal trespassing, and interference with government property, all arising from a single incident. (*Id.* at ¶ 26.) In 2014, an immigration judge ordered Petitioner Karki removed to Bhutan or, in the alternative, Nepal. (*Id.* at ¶ 27.) Petitioner Rai has been convicted of assault, vehicular assault, domestic violence, menacing, and driving under suspension. (*Id.* at ¶ 34.) In 2019, an immigration judge determined Petitioner Rai to be stateless and ordered him to be removed to Bhutan. (*Id.*) Petitioner Dhimal's criminal history is less than clear at this time but "likely includes charges related to marijuana possession and a domestic dispute." (*Id.* at ¶ 38; *see also* Affholter Decl., Doc. 22-1, Pg. ID 423.) In 2020, an immigration judge ordered Petitioner Dhimal to be removed to Bhutan. (Second Am. Habeas Petition, Doc.

2

26, ¶ 39.) All three Petitioners have remained in the United States under supervision until April 2025, when Immigration and Customs Enforcement ("ICE") arrested Petitioners and placed them in detention at the Butler County Correctional Complex in Hamilton, Ohio. (*Id.* at ¶¶ 3, 28, 35, 40, 146.)

Respondents include the Sheriff of Butler County, Ohio, Richard Jones; Attorney General of the United States, Pamela Bondi; Secretary of the United States Department of Homeland Security, Kristi Noem; Acting Director of ICE, Todd Lyons; and Director of the Detroit Field Office for ICE, Robert Lynch. (Second Am. Habeas Petition, Doc. 26, Pg. ID 433.) Each is sued in his or her official capacity as a legal custodian concerning Petitioners' detention. (*Id.*)

## II. Bhutan Refugee Resettlement and Changed Country Conditions

In the early 1990s, members of the Lhotshampa ethnic minority living in Bhutan were subjected to mass denationalization and expulsion. (Second Am. Habeas Petition, Doc. 26, ¶¶ 51-53.) Petitioners Rai and Dhimal were born in Bhutan and subsequently expelled to a refugee camp in Nepal, while Petitioner Karki was born in a refugee camp in Nepal. (*Id.* at ¶¶ 25, 31, 37.) Bhutan has refused to recognize individuals within this ethnic group as citizens; accordingly, Petitioners consider themselves to be stateless. (*Id.*)

When Petitioner Karki was ordered removed, an immigration judge listed the removal country as Bhutan, with Nepal designated as an alternative country. (Second Am. Habeas Petition, Doc. 26, ¶ 75.) But, at the time, Bhutan and Nepal refused to issue travel documents to Petitioner Karki, so ICE released him under an order of supervision. (*Id.* at ¶ 76.) Petitioners Rai and Dhimal were also ordered removed to Bhutan, but they

similarly remained under supervision. (*Id.* at ¶¶ 89-90, 95.) Release on supervision ended for Petitioners in April 2025 when they were arrested and detained. (*Id.* at ¶¶ 35, 40, 80.)

Between 2008 and 2017, the United States resettled over 85,000 Bhutanese refugees. (Second Am. Habeas Petition, Doc. 26, ¶ 56.) Although many of these refugees, including Petitioners, were issued final removal orders, "the United States uniformly refrained from removing them, citing humanitarian discretion, statelessness, and non-refoulement principles." (*Id.* at ¶ 57.) The United States maintained this policy until March 2025, when ICE deported ten resettled refugees to Bhutan. (*Id.* at ¶¶ 58-59.) According to a letter sent from the President of the International Institute for Human Rights, Environment, and Development to the United States Ambassador to Nepal, Bhutan refused to recognize these ten individuals as citizens and expelled them to India, which then transferred them to Nepal without documentation. (*Id.* at ¶¶ 1, 59-60.) In Nepal, four refugees were arrested by Nepalese immigration authorities and remain incarcerated, while others have gone missing or were denied medical care. (*Id.* at ¶ 61.) In sum, Petitioners claim that Bhutan refuses to repatriate Lhotshampa and Nepal continues to decline to recognize them as citizens. (*Id.* at ¶ 58.) Petitioners fear that Bhutan would expel them—as they did with the ten recent deportees—or sentence them to life imprisonment for unauthorized entry and for advocating repatriation. (*Id.* at ¶¶ 65, 66, 103.) Moreover, Petitioners assert that these "changed country conditions" only became publicly known sometime in April 2025. (*Id.* at ¶¶ 6, 7.)

Respondents represent that Bhutan has issued travel documents for each Petitioner, which will expire on August 18th or August 25th of this year. (Affholter Decl.,

4

Doc. 22-1, Pg. ID 421, 423, 425.) In line with the parties' agreement to provide Petitioners with a minimum of a week's notice prior to the removal of any Petitioner from the United States, Respondents have notified Petitioners and the Court that they plan to remove Petitioner Karki on June 10, 2025. (*See* Notice of Withdrawal, Doc. 16; 6/3/2025 Email Correspondence.)

## PROCEDURAL HISTORY

On May 1, 2025, Petitioners filed a Petition for Habeas Corpus and Declaratory and Injunctive Relief (Doc. 1). Specifically, they claim that execution of their removal orders would violate the Immigration and Nationality Act, the Convention Against Torture, the Foreign Affairs Reform and Restructuring Act, and the Due Process Clause. (*Id.* at ¶¶ 126-42.) Petitioners further allege that they are being unlawfully detained beyond the removal period without justification. (*Id.* at ¶¶ 143-48.) It is worth noting, however, that Petitioners "do not seek to relitigate their underlying removal orders before this Court." (*Id.* at ¶ 9.)

The day after initiating this federal case, Petitioners filed an Emergency Motion for Temporary Restraining Order seeking this Court to "[o]rder Respondents to provide written notice identifying the specific country to which each Petitioner is to be removed, including whether that country has affirmatively agreed to accept the individual." (Motion for Temporary Restraining Order, Doc. 8, Pg. ID 254.) Petitioners also asked this Court to prevent Respondents from "executing Petitioners' removal orders . . . for a reasonable period following the provision of such written notice, sufficient to allow Petitioners to pursue motions to reopen or other protection-based relief before the

5

immigration courts." (*Id.*)

After correspondence with Petitioners' counsel, the Court set this matter for a preliminary conference on May 12, 2025. (5/8/2025 Notation Order; *see* S.D. Ohio Civ. R. 65.1.) Counsel for Petitioners and counsel for the "Federal Respondents"—who entered a notice of appearance in this matter on May 8, 2025—were present by phone. (5/12/2025 Minute Entry.) On May 13, 2025, Petitioners withdrew their Application for Issuance of Order to Show Cause and Emergency Motion for Temporary Restraining Order after Respondents agreed to provide at least a week's notice before removing or transporting any Petitioner. (Notice of Withdrawal, Doc. 16.) Respondent Sheriff of Butler County filed an Amended Motion to Dismiss on May 16, 2025. (Am. Motion to Dismiss, Doc. 21.) Then, on May 29, 2025, Petitioners filed an Amended Petition with their full names in compliance with the Court's orders. (*See* Am. Habeas Petition, Doc. 24; Order, Doc. 14.) No substantive changes were made in this Amended Petition. (*See id.*) On June 8, 2025, Petitioners filed a Second Amended Petition, which shares much of the same substance but further highlights the alleged problem of notice. (*See* Second Am. Habeas Petition, Doc. 26.) Petitioners filed another Motion for Temporary Restraining Order (Doc. 29) on June 9, 2025.

## LAW AND ANALYSIS

The fundamental question of subject matter jurisdiction must precede any analysis of the merits on this matter. As federal courts are "courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute," they "have an independent obligation to determine whether subject-matter jurisdiction exists."

6

*Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

Petitioners assert that this Court possesses jurisdiction to hear this matter because it involves: (1) habeas relief under 28 U.S.C. § 2241 and supported by the Suspension Clause, (2) federal questions under 28 U.S.C. § 1331, and (3) mandamus relief under 28 U.S.C. § 1361. (Second Am. Habeas Petition, Doc. 26, ¶¶ 16, 21.) Nevertheless, in enacting 8 U.S.C. § 1252(g) through the REAL ID Act, Congress limited the jurisdiction of federal courts as follows:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), *including section 2241 of title 28,* or any other habeas corpus provision, and *sections 1361* and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or *execute removal orders* against any alien under this chapter.

8 U.S.C. § 1252(g) (emphasis added). "In the REAL ID Act, Congress decided that, as a matter of public policy, [federal courts] do not have jurisdiction to decide claims that arise from the decision of the Executive Branch to execute a removal order." *Rranxburgaj v. Wolf*, 825 F. App'x 278, 283 (6th Cir. 2020). This holds true "whether or not [federal courts] agree with ICE's decision to execute [a petitioner's] removal order." *Id.*

The plain language of 8 U.S.C. § 1252(g) therefore limits jurisdiction as it relates to claims arising from such execution of removal orders—even if federal question jurisdiction or mandamus jurisdiction would otherwise be proper. *See Elgharib v. Napolitano*, 600 F.3d 597, 607 (6th Cir. 2010). By its terms, this statutory limitation also applies to habeas relief under 28 U.S.C. § 2241, which would typically provide jurisdiction

7

over cases where an alien is held in custody in violation of the Constitution or the laws of the United States. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). That being said, certain applications of Section 1252(g) may potentially cause tension with the Suspension Clause. As the Framers enshrined in the Constitution: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. In order to successfully contest the constitutionality of this statute on Suspension Clause grounds, two things must be true: (1) the petitioners must be seeking "core" habeas relief; and (2) there is no adequate substitute to effectively test petitioners' detention. *Hamama v. Adducci*, 912 F.3d 869, 875-76 (6th Cir. 2018).

The Court views Petitioners as bringing both removal-based claims and a detention-based claim. At bottom, Petitioners' removal-based claims seek "to prevent removal until they are given clear notice of the country of removal and a right to raise post-order protection claims," rather than to "relitigate their underlying removal orders." (Second Am. Habeas Petition, Doc. 26, ¶ 9.) In making their detention-based claim, Petitioners allege that their removal is not reasonably foreseeable and is thus unjustified. (*Id.* at ¶¶ 143-48.) The Court begins with Petitioners' removal-based claims and then turns to their single detention-based claim.

## I. Removal-Based Claims

### i. The Sixth Circuit's Decision in *Hamama v. Adducci*

In addressing how Petitioners' claims and requested relief implicate this Court's jurisdiction, *Hamama v. Adducci*, 912 F.3d 869 (6th Cir. 2018), stands as the seminal case in

the Sixth Circuit. And, given its resemblance to the case at hand, a recitation of its facts and legal reasoning proves helpful. The petitioners in *Hamama* were Iraqi nationals who were ordered removed from the United States for committing crimes. *Id.* at 872. Despite these final orders of removal, many of the petitioners remained in the United States for years—or even decades—due to Iraq's refusal to repatriate them. *Id.* Many of them "had come to expect that the execution of their removals would never materialize" and, as the Sixth Circuit put it, "had been living in the United States on borrowed time." *Id.* This "borrowed time" ran out when the executive branch decided to begin executing the petitioners' final removal orders. *Id.*

In response, the petitioners filed a putative class action habeas petition, as well as a motion for a temporary restraining order "asking the district court to halt their removal to Iraq and to hear [their] arguments of allegedly changed country conditions." *Hamama*, 912 F.3d at 873. After ruling that it had jurisdiction because 8 U.S.C. § 1252(g)'s stripping of habeas review would violate the Suspension Clause, the district court granted the injunctive relief. *Id.* The Sixth Circuit, however, vacated this injunction with instructions to dismiss the removal-based claims for the following reasons. *Id.* at 880.

Beginning with the plain language of 8 U.S.C. § 1252(g), the Sixth Circuit found that "the Attorney General's enforcement of long-standing removal orders falls squarely under the Attorney General's decision to execute removal orders and is not subject to judicial review." *Hamama*, 912 F.3d at 874. The Sixth Circuit proceeded to explain why the district court's "broad, novel, and incorrect application of the Suspension Clause" was misguided for "at least two" independent reasons. *Id.* at 875.

First, the petitioners were not seeking a "core remedy" of habeas relief through their removal-based claims; thus, such relief was not protected by the Suspension Clause. *Hamama*, 912 F.3d at 875-76. "The traditional remedy provided by habeas is removing the injury of unjust and illegal confinement." *Id.* at 875 (quotation omitted). As the petitioners neither sought—nor were granted—release from custody, the Sixth Circuit concluded that habeas relief was not implicated. *Id.* Specifically, "'the nature of the relief sought by the habeas petitioners suggest[ed] that habeas is not appropriate in these cases' because 'the last thing petitioners want is simple release' but instead a 'court order requiring the United States to shelter them.'" *Id.* (quoting *Munaf v. Geren*, 553 U.S. 674, 693-94 (2008)).

Second, the Sixth Circuit explained that "[e]ven if the relief Petitioners seek was available under the common-law writ, Petitioners' Suspension Clause claim would fail for the independent reason that Congress has provided an adequate alternative as applied to them." *Hamama*, 912 F.3d at 876. This is significant because "Congress does not suspend the writ when it strips the courts of habeas jurisdiction so long as it provides a substitute that is adequate and effective to test the legality of a person's detention." *Id.* (citing *Swain v. Pressley*, 430 U.S. 372, 381 (1977)). The Sixth Circuit found that the alternative method of review—filing a motion to reopen with the ability to appeal the decision to the court of appeals—proved adequate. *Id.* at 876-77. Though the petitioners argued that this alternative would be inadequate as applied to them, the Court disagreed since they had years to file their motions to reopen and the ability to pursue stays of removal while seeking relief. *Id.*

10

### ii. Developments Since *Hamama*

Courts throughout the Sixth Circuit have faithfully applied *Hamama* as a bar to judicial review of the execution of removal orders. For instance, the District Court for the Eastern District of Michigan has frequently denied similar requests to stay removal orders in light of *Hamama*'s controlling precedent. *See, e.g., Al Shimary v. Rayborn*, No. 2:24-CV-11646, 2024 WL 3625169, at *2 (E.D. Mich. July 31, 2024); *Kazan v. Sessions*, No. 18-CV-11750, 2023 WL 2347069, at *2-3 (E.D. Mich. Mar. 3, 2023); *Portillo v. Wolf*, No. 2:20-CV-12730, 2020 WL 6130880, at *2 (E.D. Mich. Oct. 19, 2020); *El Moustrah v. Barr*, No. 19-CV-13549, 2020 WL 1473305, at *2 (E.D. Mich. Mar. 25, 2020). Not to mention, the Sixth Circuit has since reaffirmed its reliance on *Hamama*. *See, e.g., Rranxburgaj v. Wolf*, 825 F. App'x 278, 282 (6th Cir. 2020).

In an attempt to distance this matter from *Hamama*, Petitioners highlight the Supreme Court's recent per curiam opinion in *Trump v. J.G.G.*, 145 S. Ct. 1003 (2025). (Second Am. Habeas Petition, Doc. 26, ¶¶ 10, 18-19.) The petitioners in that case challenged their removal under the Alien Enemies Act ("AEA"). *J.G.G.*, 145 S. Ct. at 1005. Relevant for present purposes, the Supreme Court explained:

> Regardless of whether the detainees formally request release from confinement, because their claims for relief "'necessarily imply the invalidity'" of their confinement and removal under the AEA, their claims fall within the "core" of the writ of habeas corpus and thus must be brought in habeas. Cf. *Nance v. Ward*, 597 U.S. 159, 167 (2022) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)).

> And "immediate physical release [is not] the only remedy under the federal writ of habeas corpus." *Peyton v. Rowe*, 391 U.S. 54, 67 (1968); *see, e.g., Nance*, 597 U.S. at 167 (explaining that a capital prisoner may seek "to overturn his death sentence" in habeas by "analog[y]" to seeking release).

11

*Id.* Petitioners contend that the Supreme Court has therefore "expressly superseded" *Hamama*'s holding that habeas review is unavailable when a petitioner does not seek physical relief. (Second Am. Habeas Petition, Doc. 26, ¶ 18.)

The Court arrives at a more nuanced reading of *Hamama* and *J.G.G.* for the following reasons. To begin, the noncitizens in *J.G.G.* "challenge[d] the Government's interpretation of the [Alien Enemies Act] and assert[ed] that they do not fall within the category of removable alien enemies." *J.G.G.*, 145 S. Ct. at 1005. Thus, the Supreme Court examined the availability of judicial review for individuals "subject to detention and removal under [the Alien Enemies Act]" and did not have to wrestle with the jurisdictional provisions of 8 U.S.C. § 1252. *Id.* at 1006; *see also J.G.G. v. Trump*, No. 25-5067, 2025 WL 914682, at *28 (D.C. Cir. Mar. 26, 2025) (Millett, J., concurring) ("[The Alien Enemies Act], of course, is not part of Title 8, Chapter 12, and so is not subject to Section 1252(g)'s jurisdiction stripping.") The Petitioners in the case at bar, in contrast, do not face summary removal under the Alien Enemies Act.

A few more distinctions warrant mentioning. Unlike the habeas relief concerning the Alien Enemies Act and similar removal challenges that "necessarily imply the invalidity of . . . confinement and removal," *J.G.G.*, 145 S. Ct. at 1005 (quotation omitted), "Petitioners do not challenge the removal orders" or "seek to relitigate [them] before this Court." (Second Am. Habeas Petition, Doc. 26, ¶¶ 9, 22.) Instead, the relief sought by each Petitioner "only serves to prevent the actual removal of an otherwise removable noncitizen." *Mohamed v. Barr*, 797 F. App'x 1019, 1023-24 (6th Cir. 2020) (explaining that seeking relief under the changed-circumstances provision of 8 U.S.C. § 1229a(c)(7)(C)(ii)

12

is not a challenge to "removability"). Courts across the country have therefore viewed similar requests to stay removals as contesting the timing of the executive branch's decision to enforce a removal order, rather than challenging the validity of the removal order itself. *See, e.g., K.K. v. Garland*, No. 23-CV-6281, 2025 WL 274431, at *2 (W.D.N.Y. Jan. 23, 2025) (collecting cases); *Rauda v. Jennings*, 55 F.4th 773, 779-80 (9th Cir. 2022); *Tazu v. Attorney General United States*, 975 F.3d 292, 297 (3d Cir. 2020).

Thus, Petitioners' removal-based claims are more reminiscent of those in *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020). In that case, the Supreme Court explained that by seeking vacatur of his removal order and an opportunity to apply for asylum and other relief from removal, the petitioner was seeking something "far outside" and "entirely different" from what can be said to be "core" habeas relief. *Id.* at 117-19. Though the Supreme Court did not revisit *Thuraissigiam* by name in *J.G.G.*, recall that the discussion of "core" habeas relief in *J.G.G.* was premised upon a finding that the relief sought "necessarily impl[ies] the invalidity of [petitioners'] confinement and removal." *J.G.G.*, 145 S. Ct. at 1005 (quotation omitted); *see also J.G.G. v. Trump*, No. 25-5067, 2025 WL 914682, at *35 n.40 (D.C. Cir. Mar. 26, 2025) (Walker, J., dissenting) (explaining that the petitioners in *J.G.G.* could seek habeas relief, unlike Thuraissigiam, who "was not making a core habeas challenge to his removal" but "seeking affirmative administrative relief"). In a word, Petitioners' removal-based claims do not "contest[ ] the lawfulness of restraint" but instead seek the ability to "remain in [the United States] or to obtain administrative review potentially leading to that result."

13

*Thuraissigiam*, 591 U.S. at 117; *see also E.F.L. v. Prim*, 986 F.3d 959, 965-66 (7th Cir. 2021) (applying *Thuraissigiam* to 8 U.S.C. § 1252(g) context); *Rauda*, 55 F.4th at 779-80 (same).

The Court would finally note that the Supreme Court's language in *J.G.G.* as to the scope of habeas relief largely cites precedent decided before *Hamama*. *See J.G.G.*, 145 S. Ct. at 1006 (citing *Peyton v. Rowe*, 391 U.S. 54, 67 (1968); *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *but see Nance v. Ward*, 597 U.S. 159, 167 (2022)). The Sixth Circuit therefore appears to have had the opportunity to decide *Hamama* with a similar understanding of "core" habeas relief.

For all these reasons, this Court will not take it upon itself to deviate from Sixth Circuit precedent.

### iii. Applying *Hamama*

The question therefore becomes how *Hamama* applies to Petitioners' claims and requested relief. As explained, the petitioners in *Hamama* sought "a stay of removal until they . . . had a reasonable period of time to locate immigration counsel, file a motion to reopen in the appropriate administrative immigration forum, and have that motion adjudicated to completion in the administrative system, with time to file a petition for review and request a stay of removal in a federal court of appeals." *Hamama*, 912 F.3d at 875. In striking similarity, Petitioners seek to enjoin execution of their long-standing removal orders to allow for a further opportunity to pursue motions to reopen or other legal relief. (Second Am. Habeas Petition, Doc. 26, Pg. ID 510.) Though Petitioners' newest iteration of claims also requests to stay removal until this Court makes an "evidence-based determination regarding the country to which each Petitioner will be removed,"

14

this does not sound in habeas. (*Id.*) As Petitioners' requests implicate 8 U.S.C. § 1252(g) but fall beyond core habeas relief, the Court follows *Hamama*'s lead and concludes that it lacks subject matter jurisdiction over Petitioners' removal-based claims.

Petitioners contend that while the as-applied Suspension Clause challenge failed in *Hamama*, it ought to succeed here. (Second Am. Habeas Petition, Doc. 26, ¶ 17; Reply, Doc. 27, Pg. ID 682-86.) But, even assuming arguendo that Petitioners are seeking cognizable core habeas relief, they have not sufficiently shown how the congressionally-designed avenue for relief is constitutionally infirm. "When Congress stripped the courts of jurisdiction to grant habeas relief in § 1252(g), it provided aliens with an alternative method to challenge the legality of removal orders: a motion to reopen followed by a petition for review filed in a court of appeals." *Hamama*, 912 F.3d at 876 (citing 8 U.S.C. § 1252(a)(5), (2)(D)); *see also Nasrallah v. Barr*, 590 U.S. 573, 575 (2020); *Kazan*, 2023 WL 2347069, at *2. Additionally, Petitioners have the opportunity to seek judicial review of their removal orders (and accompanying questions of law and fact) exclusively within the appropriate court of appeals. *Cooper Butt ex rel Q.T.R. v. Barr*, 954 F.3d 901, 905-06 (6th Cir. 2020) (citing 8 U.S.C. § 1252(a)(5), (b)(9)); *see also* 8 U.S.C. § 1252(a)(4).

These avenues of review are insufficient in Petitioners' estimation since they have not received adequate notice as to where Bhutan may expel them. (Second Am. Habeas Petition, Doc. 26, ¶ 12; Reply, Doc. 27, Pg. ID 677, 682, 690.) Petitioners do not appear to contest that Respondents plan to remove them to Bhutan—the same country listed on their orders of removal for years. (*See, e.g.*, Reply, Doc. 27, Pg. ID 677 (anticipating the landing in Bhutan and then expulsion to India)). Framed as either questioning the order

15

of removal to Bhutan itself or as a motion to reopen based upon "changed country circumstances" in how Bhutan may treat them, Petitioners' argument belongs in the proper forums.

Petitioners further argue that this matter is distinguishable from *Hamama* because the individuals in that case had years to file motions to reopen. (Second Am. Habeas Petition, Doc. 26, ¶ 17; Reply, Doc. 27, 286.) While Petitioners have known about their final removal orders to Bhutan for years, Petitioners claim that they need more time to file motions to reopen since the facts undergirding such motions only became publicly available in April 2025. (*Id.* at ¶¶ 6-7, 27, 34, 39.) As *Hamama* and Respondents emphasize, however, "[t]he administrative scheme established by Congress even provide[s] multiple avenues to stay removal *while pursuing relief.*" *Hamama*, 912 F.3d at 876-77 (emphasis added); *see, e.g.,* 8 C.F.R. §§ 1003.6, 1003.2, 1003.23; (Return of Writ, Doc. 22, Pg. ID 411.) Petitioners initiated this federal case more than one month ago, and at least one Petitioner has been litigating a motion to reopen and a motion to stay—based on other grounds—within the immigration system. (Affholter Decl., Doc. 22-1, Pg. ID 421; Second Am. Habeas Petition, Doc. 26, ¶¶ 30, 78.) For these reasons, Petitioners have not sufficiently shown "constitutional inadequacy" as it relates to the opportunity to seek review through the channels designed by Congress. *Hamama*, 912 F.3d at 877. Petitioners' argument that Section 1252(g) violates the Suspension Clause as applied to them is therefore not well taken. The Court must dismiss Petitioners' removal-based claims due to lack of jurisdiction.

## II. Detention-Based Claim

Though the Court has established that it lacks jurisdiction over Petitioners' removal-based claims, it now must consider their detention-based claim. The two types of claims are not necessarily one and the same. In *Hamama*, the Sixth Circuit confirmed that the "district court's jurisdiction over the detention-based claims [was] independent of its jurisdiction over the removal-based claims." *Hamama*, 912 F.3d at 877. Elsewhere, the Sixth Circuit has explained that 8 U.S.C. § 1252(g) does not suspend habeas review as to challenging the "authority to indefinitely detain a non-citizen following the execution of a removal order." *Moussa v. Jenifer*, 389 F.3d 550, 554 (6th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678 (2001)); *see also Al Shimary v. Rayborn*, No. 2:24-CV-11646, 2024 WL 3625169, at *2 (E.D. Mich. July 31, 2024) (denying stay of removal on jurisdictional grounds but allowing detention-based claim to proceed); *Mingrone v. Adducci*, No. 2:17-CV-11685, 2017 WL 4909591, at *8 (E.D. Mich. July 5, 2017) (addressing merits of detention-based claim because petitioner "could be released and ICE could still proceed to remove him").

To the extent that Petitioners' detention-based claim involves an independent inquiry of whether their removals are reasonably foreseeable, the Court will proceed to the substance of this claim. (*See* Second Am. Habeas Petition, Doc. 26, ¶¶ 143-48.) As both parties recognize, 8 U.S.C. § 1231(a)(6) permits the detention of certain aliens beyond the initial 90-day statutory "removal period" in order to effectuate removal. (*See* Second Am. Habeas Petition, Doc. 26, ¶ 145; Return of Writ, Doc. 22, Pg. ID 416.) Rather than authorizing "indefinite detention," this statute has been read to "limit[ ] an alien's post-

17

removal-period detention to a period reasonably necessary to bring about that alien's removal." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). The Supreme Court anticipated that determining a "reasonably necessary" period in any particular case, while still affording the executive branch the appropriate "leeway" in this field, "will often call for difficult judgments." *Id.* at 699-701. So, the Supreme Court handed down a general rule: a 6-month period of detention is presumptively reasonable. *Id.* at 701. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

Turning to the record here, an ICE supervisory officer has averred that Bhutan has issued travel documents for each Petitioner, which will expire on August 18th or August 25th of this year. (Affholter Decl., Doc. 22-1, Pg. ID 421, 423, 425.) Respondents have also represented that Petitioner Karki is scheduled to be removed on June 10, 2025. (*Id.* at Pg. ID 421; 6/3/2025 Email Correspondence.) Each Petitioner has been detained since April 2025. (Second Am. Habeas Petition, Doc. 26, ¶¶ 35, 40, 80.) These roughly two-month periods of detention fall well below the 6-month cutoff of presumptive reasonableness. Petitioners' Amended Habeas Petition appears to share a similar understanding of the imminency of their removals. (*See id.* at ¶¶ 14, 23, 85.) In light of this timeframe, Petitioners have not established that their detention is unlawful at this time. This claim must therefore be dismissed.

## CONCLUSION

For all these reasons, the Court **ORDERS** the following:

1. Petitioners' removal-based claims are **DISMISSED** for lack of subject matter jurisdiction;

2. To the extent the Court has subject matter jurisdiction over Petitioners' detention-based claim, it is **DISMISSED**;

3. Petitioners' Second Amended Petition for Writ of Habeas Corpus and Declaratory Relief and Injunctive Relief (Doc. 26) is therefore **DISMISSED**;

4. Respondent Sheriff of Butler County's Motions to Dismiss (Docs. 19, 21) are both **DENIED AS MOOT**;

5. Petitioners' Motion for Temporary Restraining Order (Doc. 29) is **DENIED AS MOOT**; and

6. This matter is **TERMINATED** from the Court's docket.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: *Matthew W. McFarland*
JUDGE MATTHEW W. McFARLAND